3291. ELYEA-AUSTELL CO. *v.* WHITEHURST DRUG CO.

The evidence demanded a verdict for the plaintiff, and the verdict for the defendant, being without any evidence whatever to support it, should have been set aside, and the plaintiff's motion for a new trial granted.

DECIDED OCTOBER 10, 1911.

Complaint; from city court of Dublin—Judge Hawkins. February 13, 1911.

*Ira S. Chappell,* for plaintiff.

*J. S. Adams,* for defendant.

HILL, C. J. The Elyea-Austell Company brought suit against the Whitehurst Drug Company on an account with itemized bill of particulars, based upon the following written order: "Elyea-Austell Company. Atlanta, Ga. Date April 16, 1909. Ship to F. M. Harp, Dublin, Ga. One 24-in. frame Flco Bicycle, Kelley bars 1906 Corbin Duplex brake 1-5/8 clincher tires Troxel saddle black. One girl's bicycle, 18-in. frame, 26-in. wheels, with a good grade of tires, black. One 22-in. Flco Bicycle, with Atherton brake collar, black. 1 dozen W. P. W. inner tubes, 28x1⅝. 300 12-in. spokes. 3 dozen rubber cement. 5 pairs Winner single tube tires 28x1⅝, Flco trade mark. O. K. Whitehurst Drug Company. Terms 2 per cent. 10 days, or net 30 days." The defendant admitted the written order, admitted that the goods as ordered were shipped by the plaintiff to F. M. Harp in accordance with the terms of the order, and that he received them and had not paid for them. The defendant refused to pay the account, on the ground

that the plaintiff had not sent to it an invoice of the goods shipped to Harp, but had sent the goods directly to Harp, accompanied by the invoice, and had entered the account on its books against Harp, claiming that the letters "O. K." immediately preceding the name, "Whitehurst Drug Company," placed on the order by it, should be construed to mean that if the goods were shipped to F. M. Harp, the invoice for the goods was to be sent to the Whitehurst Drug Company, and that unless this was done, it was understood that the defendant would not be liable to pay the account. The jury found a verdict for the defendant, and the plaintiff's motion for a new trial was overruled.

The written order for the goods, given by the defendant was an original undertaking by it, and made it primarily liable to the plaintiff. There was no evidence whatever in support of the plea that the letters "O. K." meant that the goods were to be shipped to F. M. Harp, while the invoice was to be sent to the Whitehurst Drug Company, or that there was any understanding between the plaintiff and the drug company that unless this was done, the drug company would not be liable.

The evidence discloses the following facts: Harp was insolvent and unable to buy any goods from the plaintiff on his own credit, and he induced the Whitehurst Drug Company to order the goods from Elyea-Austell Company directly for him. The credit was extended to the Whitehurst Drug Company and expressly denied by the plaintiff to Harp, and this fact was known to the defendant when the order was given for the goods. There is no commercial or legal reason why the Whitehurst Drug Company was entitled to an invoice for the bill of goods which it had ordered sent to Harp, but it was proper that an invoice should accompany the goods, in order that the party receiving them might verify the shipment. But, even if no invoice had been sent either to Harp or to the Whitehurst Drug Company, this would constitute no reason why the goods which had been ordered by a written order by the Whitehurst Drug Company, and which had been sent to Harp in compliance with this written order, on the faith of which credit was extended, not to Harp, but to the Whitehurst Drug Company, should not be paid for, in view of the fact that the goods as ordered were admitted to have been received by Harp, and the only complaint made is that the invoice was sent to Harp, and not to the

Whitehurst Drug Company.  Of course, the letters "O. K." were subject to explanation by parol evidence.  Ordinarily, it is well understood that these two letters mean "approved" or "correct." If they had a different meaning in this special case,—a meaning that the invoice should have been sent to the person ordering the goods, and not to the person receiving them, otherwise the person ordering them should be released from his contract,—this would make a difference, and might be a defense; but there is no evidence whatever to sustain this contention.  It did not affect the liability of the Whitehurst Drug Company that the goods were charged against Harp on the books of the plaintiff.  The only significance of this fact would be that the Elyea-Austell Company regarded the Whitehurst Drug Company as the guarantor of the account.  And if it was the guarantor of the account, the guaranty was absolute in its terms, and no invoice was necessary to be sent to the guarantor in order to make it liable.  The only essential questions were:  Were the goods ordered by the defendant?  Were they sent as ordered, on the faith of the guaranty?  And were they received and not paid for?  If so, the defendant was liable to pay for them, and the defense set up was wholly unsupported by the evidence, and the verdict for the plaintiff was demanded.

*Judgment reversed.*